Thomas on Mortgages says, at page 290:

"A person demanding a certificate of satisfaction of a mortgage should prepare the instrument and present it to the mortgagee, at the same time offering to pay the expenses of the execution."

It therefore follows that a mortgagee cannot insist upon preparing the satisfaction piece and charge the mortgagor therefor, but that the mortgagor may himself prepare the satisfaction piece and, upon the payment of the mortgage debt, present the satisfaction piece thus prepared to the mortgagee and tender him the fee specified in section 3298 of the Code of Civil Procedure, to wit, 25 cents, and the mortgagee will be obliged to sign and acknowledge the same.

In this case the defendant was in the wrong. He should at least have given to the plaintiff the bond and mortgage when the full amount was paid; but he was not obliged to give his prepared satisfaction piece without payment of the expenses. I do not find from the evidence that the plaintiff presented him with a drawn satisfaction piece, requesting execution upon the tender of the notary's fee.

My decision is that the defendant deliver to the plaintiff the bond and mortgage herein, and that within 10 days the plaintiff prepare a satisfaction piece, present it to the defendant, and tender him the notary fees, or take a notary or commissioner to the defendant and demand execution of the same; and I direct the defendant mortgagee, when these conditions are complied with, to execute the instrument. I award no costs.

---

## DUBNOW v. NEW YORK CITY RY. CO.

(Supreme Court, Appellate Division, First Department.   December 20, 1907.)

1. CARRIERS—INJURIES TO PASSENGER—EVIDENCE—SUFFICIENCY.

In an action against a street railroad for the death of a passenger, evidence *held* insufficient to show that the driver of defendant's car intentionally pushed decedent from the platform.

2. SAME.

Where decedent boarded the crowded front platform of a horse car, and the driver with an involuntary motion, resulting from the necessity of properly managing his horses, pushed decedent from the platform, there was no liability on the part of the carrier.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 9, Carriers, §§ 1200–1203.]

3. TRIAL—EXCEPTIONS—SUFFICIENCY AND SCOPE.

Where the court, at the request of plaintiff's counsel, gave a certain instruction to the jury, which was excepted to, and, after a colloquy between the court and counsel, the court substantially reiterated the requested instruction, the same was subject to defendant's exception.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 46, Trial, §§ 192, 254–258.]

Clarke and Houghton, JJ., dissenting.

Appeal from Trial Term.

Action by Elka Dubnow, as administratrix of the estate of Jacob Dubnow, deceased, against the New York City Railway Company. From a judgment in favor of plaintiff, and from an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before PATTERSON, P. J., and McLAUGHLIN, IN-GRAHAM, CLARKE, and HOUGHTON, JJ.

Bayard H. Ames, for appellant.
Moses Feltenstein, for respondent.

INGRAHAM, J.   The plaintiff's intestate was killed by one of the cars of the defendant railroad at or about Delancey and Attorney streets, in the city of New York.   It appeared from plaintiff's testimony that the car from which the deceased fell and was killed was a horse car that was slowly moving west on Delancey street towards Broadway.   There were a number of passengers on the front platform, upon which the deceased jumped, when the driver said to him: "Don't you see the car is crowded?  Why don't you get off?"  Then with his elbow he pushed the deceased, who swung around to the front of the car, falling between the dashboard and the horses.   One witness for the plaintiff testified that the elbow of the driver's left arm hit or pushed the boy; that the driver held the lines of the horses with the left hand, and with the right hand had hold of the brake, and that, when he pushed the deceased, the deceased fell off; that as the boy fell the driver stopped the car.   The cause of action as alleged in the complaint is based solely upon the negligence or carelessness of the defendant's employés in pushing the deceased from the car while in motion, and the case was submitted to the jury upon that theory of the plaintiff's right to recover.

The action cannot be sustained upon any theory of a breach of contract between the deceased and the company, as that cause of action, is not set up in the complaint and was not presented upon the trial.   It is doubtful whether the deceased could be said to be a passenger, or whether any relation of that kind ever existed.   According to the plaintiff's testimony, as soon as the deceased got on the car he was told by the driver to get off, as it was crowded, and that subsequently he fell off the car as the result of a push from the driver's arm.   Thus, so far as the employés of the defendant had acted at all, they refused to allow him to continue on the car because the car was crowded, and upon his failure to get off the car he was pushed from it.   The car did not stop for him.   The deceased was not invited, either expressly or by implication, to board the car.   No fare was asked for or received; but the deceased in some way fell off the car immediately after boarding it.   So the cause of action must depend upon proof that the driver either negligently or maliciously and wantonly threw the deceased from the car.   That is the cause of action alleged in the complaint, that was the cause of action that was submitted to the jury, and the judgment can only be sustained if the evidence justifies a recovery upon such a cause of action.

There were two witnesses, called by the plaintiff, who claimed to have witnessed the incident which resulted in the deceased falling or being pushed from the car.   The first and main witness was one Goldberg, who testified that on the 15th of April, 1904, about 7 o'clock in the morning, he was a passenger on a Delancey street car on the front platform, standing with his back to the car and facing the horses;

that the car was crowded; that the accident happened as the car was crossing Attorney street; that the car was drawn by two horses, and was going west towards Broadway slowly up the hill; that there were other persons standing on the front platform; that the deceased came from Attorney street, "running slow"; that the car did not stop; that the deceased jumped on the front platform of the car, next to the witness, and standing in the middle of the platform; that the driver said to the deceased, "Don't you see the car is crowded? Why don't you get off?" and then with the elbow of his left arm pushed the boy; that the driver was standing in the center of the platform, and had the reins with which he was driving the horses in his left hand and his right hand upon the brake; that, when he pushed him, the boy fell off; that the deceased was standing in front of the witness, next to the driver. The witness stated several times that he could not explain in English exactly. The deceased was 16 or 17 years of age. There were two men between the driver and the door of the car. There were seven persons altogether on the front platform, of whom only the witness and the deceased were to the left of the driver. This witness seems to have made several statements before the trial which were somewhat inconsistent with his testimony. On cross-examination the witness said:

"The driver held his reins in his left hand. I claim that the driver touched this man with his elbow. * * * The driver did not move from his place where he was standing. He stood right in the middle of the platform, with his right hand on the brake and his left hand on the reins. After he said, 'Don't you see the car is crowded?' he moved a little bit, and he gave him a push with his elbow. He moved just with his body—not with his feet."

The other witness to the accident was standing on the right-hand step of the car, on the opposite side from that upon which the deceased got on the platform. He testified:

"I stepped up just before the boy did, as the boy was coming up on the other side of the car. I got on the right side, and the boy came on the left side. The minute—it wasn't a minute, but probably a second—the boy got up on the platform and was standing by the driver. The driver hollered to him, 'Get off the car; take the next car,' and he tried to give him a push with his arm. Of course, I couldn't see exactly the way he gave him the push; but the boy fell in front of the car, because the boy started to hold himself by that railing, you know, that comes around the car at the front."

It appears that the driver was between the witness and the deceased. The driver made no remonstrance as to any one else getting on the platform. This is all the testimony as to any act of the driver in relation to the deceased. The driver was standing attending to his duties in the middle of the platform, one hand holding the reins and the other the brake. The deceased stood immediately alongside of the driver. There is not the slightest evidence that the motion of the driver's elbow was not connected with the proper driving of the horses, or that the movement of his arm was intended to push the deceased off the car.

It is quite apparent that a person crowding up against a driver having to manage a team of horses and the brake of a car would be liable to interfere with the driver; and if a driver of a car, while making a movement necessary in the management of his horses and brake, strikes a person who voluntarily places himself beside him, neither

the driver nor the company can be held liable for the consequences. The fact that the driver objected to the deceased getting on the car, crowded as it was, and standing on the platform immediately next to him and in a position which might interfere with his management of the car and horses, does not justify an inference that the driver intended to push the deceased off the car. The driver was certainly entitled to have sufficient room to perform his duties, and there is nothing to show that the movement of the driver's arm, which resulted in what was described as a push against the deceased, was not necessary in properly controlling the horses. The driver had died before the trial; but there was considerable evidence from passengers and others in the street that the boy fell getting on the car while in motion. The evidence of the plaintiff is entirely consistent with the inference that the driver in some way, in the management of the horses, was compelled to move his arm, and that in doing so it came in contact with the deceased, who had voluntarily placed himself alongside the driver in such a position that any movement of the driver's arm would involve its striking the deceased. It seems to me that, in order to sustain the finding, more has to be shown than a condition which is consistent with an involuntary motion resulting from the necessity of properly managing the horses. We think, therefore, that the verdict against the defendant, holding it liable for negligence or an assault by the driver, was against the weight of evidence.

I also think the charge of the court in answer to a request of the plaintiff was error. Counsel for the plaintiff asked the court to charge that if the driver did not intend to push the boy off, but simply to throw him away from himself, and as the result of that push the boy lost his footing and fell, the consequences would be the same. To this request the court replied:

"If the boy came to his death by reason of the push, whether the driver threw him under the wheels, or pushed him, and he tripped and fell under the wheels, or in any other way, if his death was the result of the push by the driver, then the defendant is liable, and if the boy slipped when he went to jump on the car the company is not liable."

To this counsel for the defendant excepted. There was some discussion between the court and counsel as to this charge, when the court said:

"At the request of the defendant, gentlemen, I instruct you that if by an error of judgment the driver pushed the boy off then the company is not liable."

To which counsel for the plaintiff said:

"That is what he wants charged."

The court then said:

"How does any question of error of judgment of the driver come into this case?"

To which counsel for the defendant said:

"It does not on the facts; but I thought that Mr. Feltenstein's request was improper, because it did not contain that fact."

Counsel for the plaintiff then said:

"In what way do you desire the request as last charged by the court to be modified?"

And counsel for the defendant said he was satisfied with the court's last charge. The court then said:

"Then you withdraw your exception?"

And counsel for defendant said:

"I take no exception to it, but I do except to the charging of the request of Mr. Feltenstein."

The court then said to the jury:

"Now, gentlemen, I think you have all the law that is necessary for you to determine, first, these two questions of fact: Was this boy pushed off—whether maliciously or not is immaterial—as testified to by the plaintiff's witnesses? Or was he running for the car, and did he slip and fall, as testified to by defendant's witnesses? In the one case, if he slipped and fell, the verdict should be for the defendant. In the other case, if you find that he was pushed off by the driver, and in that way he fell, then you may find for the plaintiff. If you are in doubt, and you cannot determine, then you will find for the defendant."

I think this whole charge was clearly erroneous. It took away from the jury the question as to whether the driver was either negligent or wanton, instructing them as a matter of law that if there was a push, and the deceased fell off in consequence, the defendant was liable, and took from the jury the question of contributory negligence of the deceased. While the last instruction was not excepted to, I think the court fairly had notice that the defendant insisted upon his exception to the charge of the court in response to the plaintiff's request, and, as that was subject to the same objection, it seems to me that it was erroneous. No one can read the whole charge without the conviction that the jury must have understood that the one fact that they had to determine was whether or not the driver pushed the boy off the car, and, if he did push him off, whether it was an intentional or involuntary push, that the defendant was liable. Certainly the evidence is just as consistent with a mere involuntary motion of the driver's arm in managing the horses as it was with an intentional push to throw the deceased from the car. The defendant had taken the exception to the remarks of the judge in answer to the plaintiff's request to charge. It stood upon the record. The objectionable character of the charge was not in any way withdrawn or modified; but the court deliberately repeated the proposition which had been excepted to, and which exception had not been withdrawn, but had been insisted upon. I think the exception was still available to the defendant, and, as the charge was clearly error, that also requires the reversal of the judgment.

It follows that the judgment and order appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur, except CLARKE and HOUGHTON, JJ., who dissent.